ß177

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No. 22-119 |
| | ) | |
| v. | ) | (18 U.S.C. §§ 1341, 1343 and 1957(a)) |
| | ) | |
| SETH ALLEN AIKENS, II | ) | **[UNDER SEAL]** |

**INDICTMENT**

**COUNTS ONE THROUGH SEVENTEEN**

The grand jury charges:

FILED

MAY – 3 2022

CLERK U.S. DISTRICT COURT
WEST. DIST. OF PENNSYLVANIA

### INTRODUCTION

At all times relevant to this Indictment:

1.    The defendant, SETH ALLEN AIKENS, II (hereinafter, AIKENS), was a resident of Clarion County in the Western District of Pennsylvania.

2.    AIKENS was the owner and operator of several purported businesses, including "Red Thread Technologies LLC" (Red Thread), "Avare Supply," "Owl Apps" (Owl), and "New Day Oils LLC" (New Day Oils), among others, each with their principal place of business in Clarion County, Pennsylvania (hereinafter, the Company or Companies).

3.    Through the above Companies, AIKENS solicited customers by claiming falsely that he possessed expertise and the capability to provide software design, production services, and other services to the public, including technology and product development, website development, automated inventory systems, merchant processing systems, and CBD (Cannabidiol) products.

### THE SCHEME AND ARTIFICE TO DEFRAUD

Beginning in and around June 2016, and continuing thereafter until in and around March 2020, in the Western District of Pennsylvania and elsewhere, the defendant, SETH ALLEN

AIKENS, II, devised and intended to devise a scheme and artifice to defraud other persons, and to obtain money and property by means of materially false and fraudulent pretenses, representations, promises.

4.     It was the object of AIKENS's scheme and artifice to defraud to induce customers (hereinafter, clients) to make false representations to clients so that they would purchase his Companies' services, to extract significant fees, to pressure the clients into making additional payments for non-existent services, and to instead use the clients' funds for his personal benefit, including through the purchase of construction equipment, cars, trucks, and other personal items.

5.     It was a part of the scheme and artifice to defraud that AIKENS produced fictitious documents, such as Company letterhead, contracts, and other documentation, which he used to deceive clients into believing that he could perform legitimate services in the field of mobile applications, credit card processing, web site creation, and other IT-type services.

6.     It was further a part of the scheme and artifice to defraud that AIKENS produced fictitious documents for clients in which he purported to have business relationships with reputable and well-known companies, such as Progressive Insurance or Cabela's, which businesses allegedly purchased AIKENS's Companies' products and services.

7.     It was further a part of the scheme and artifice to defraud that AIKENS falsely represented that he earned millions of dollars in his prior projects.

8.     It was further a part of the scheme and artifice to defraud that AIKENS produced fictitious "screen shots" of bank statements which falsely reflected account balances in the millions of dollars in order to convince clients to retain his services.

9.     It was further a part of the scheme and artifice to defraud that AIKENS falsely represented to clients that he would, if needed, provide financing for the projects from his own funds, or that he had investors for client projects.

10.     It was further a part of the scheme and artifice to defraud that AIKENS falsely represented that he had business partners in New York, warehouses to store his merchandise, and 35 to 40 employees working for his Companies.

11.     It was further a part of the scheme and artifice to defraud that AIKENS regularly demanded additional monies from clients for various expenses and fees, including, for example, legal fees, product licensing fees, and government fees, and refused to continue to work on client projects until the additional fees were paid.

12.     It was further a part of the scheme and artifice to defraud that AIKENS demanded virtual control over clients' websites and merchant processing systems, and would threaten clients that he would shut their systems down if they refused to pay the additional fees.

13.     It was further a part of the scheme and artifice to defraud that AIKENS intimidated clients to force additional payments by telling them "you need to stay in or you will lose your money" or, "if you don't give me this money right now you'll lose everything."

14.     It was further a part of the scheme and artifice to defraud that AIKENS threatened to take legal action against clients in order to force such clients to continue paying him for the services he falsely represented he was providing.

15.     It was further a part of the scheme and artifice to defraud that AIKENS made lulling statements to deceive the clients, such as "the project is being done," or that the "software is being tested," or that there were delays in production or shipping caused by third parties, in order to avoid producing a product to the client.

16.     It was further a part of the scheme and artifice to defraud that AIKENS caused bank accounts, as well as Stripe and PayPal accounts, to be opened to accept payments from the clients.

3

17.     It was further a part of the scheme and artifice to defraud that AIKENS made false and fraudulent representations to the following clients, each of whom is known to the grand jury and identified by initials, in the following specific ways:

<u>Clients R and EM</u>

18.     At all times material to this Indictment, R and EM owned a commercial trucking company known to the grand jury as ML, located in Shippenville, Pennsylvania.

19.     In and around June 2016, R and EM solicited AIKENS's services to manufacture and install GPS and wireless lighting systems in R and EM's commercial trucking fleet.

20.     On or about March 10, 2017, AIKENS falsely stated to R and EM that he had secured investors for R and EM's project.

21.     On or about April 11, 2017, AIKENS falsely stated to R and EM that R and EM would be "receiving payments" from insurance companies to purchase R and EM's product.

22.     Between in and around June 2016, and continuing until in and around April 2017, R and EM paid AIKENS a total of approximately $118,674.00 in personal checks made payable to either Owl Mobile  or to AIKENS personally for the GPS and wireless project.

23.     During in and around 2017, AIKENS fraudulently demanded additional fees, and to induce payment of additional funds, threatened R and EM with statements such as "you need to stay in or you will lose your money" or "you're blowing it.  You're going to lose your money."

24.     AIKENS also fraudulently demanded fees from R and EM for headsets, extra batteries, copyrighting, and other fictitious expenses.

25.     AIKENS failed to produce either the GPS or wireless lighting systems for R and EM, and on or about February 14, 2017, made false excuses for the delay and failure to complete the project due to the "complexity of the project."

### Client RB

26.     In and around early 2017, RB approached AIKENS with the concept of developing a trail camera called the Brute Cam.  AIKENS falsely represented to RB that he had the sophistication and business relationships to produce and market the Brute Cam.

27.     Based upon these misrepresentations, in and around May 2017, RB entered into a written agreement with AIKENS and Owl Apps whereby, for a flat fee of $6,500.00, AIKENS, through Owl Mobile, would develop the software and obtain patents to produce approximately 2,200 Brute Cam cameras and a mobile app by August 2017.

28.     Throughout in and around 2017, AIKENS made fraudulent representations that he produced and was ready to ship thousands of Brute Cams, that he had a partnership with Cabela's, and that "I got cabelas money" and that AIKENS would "guarantee [RB] his money if the project fell through."

29.     Between in and around February 2017, until in and around April 2018, RB issued personal checks payable to AIKENS totaling approximately $456,223.00 for the production of the Brute Cam and a mobile app.

30.     AIKENS failed to produce and deliver the Brute Cam to RB, and made false excuses to RB that "the project is pending being done man" or "everyday passes cost more money," or that the camera was "tested on iPhone 8's and iPhone X."

### Client CG

31.     In and around June 2018, CG posted an advertisement on Craigslist seeking someone to develop a mobile app for an e911 concept for the purpose of permitting non-English speaking users to have their communications to 911 translated to English for the 911 operator.

32.     On or about June 25, 2018, AIKENS responded by email to CG and stated that he owned a company called Red Thread Tech which specializes in "many varieties of development" and that it "create[d] projects very quick."

33.     AIKENS falsely represented to CG that his company did "millions of dollars" in business with the government, and that he was an "expert in mobile apps."

34.     Based upon these misrepresentations, between in and around July 13, 2018, and January 26, 2019, CG paid AIKENS approximately $9,245.00 to develop the e911 app.

35.     AIKENS failed to develop the mobile app for CG.

<u>Client NB</u>

36.     At all times material to this Indictment, NB operated companies known to the grand jury as HK and MYM which produced baby novelty gifts and offered ultrasound services to expectant mothers.

37.     AIKENS falsely represented to NB that he had done work for hospitals and health care providers in the area of data processing, and offered to develop for NB both a web application and apps to integrate the systems between NB's companies.

38.     Based upon these misrepresentations, in and around August 2018, NB entered into an agreement with AIKENS and Red Thread whereby AIKENS proposed to create by November 1, 2018, heartbeat capture apps and other web services for a flat fee of $7,500.

39.     Between August 2018 and September 2018, NB paid AIKENS approximately $10,855 in fees for the creation of the apps and web services; however, AIKENS failed to produce the apps or web applications, and falsely blamed delays on IOS updates, SSL certificates, and other fabricated excuses.

<u>Client SR</u>

40.　　At all times material to this Indictment, SR owned several medical device companies, and in and around 2018 created a company known to the grand jury as Z which offered online sales of cannabidiol (CBD) products and gummy bears to the public.

41.　　SR met with AIKENS who falsely represented to SR that he previously worked with the United States Department of Defense and other agencies, and that he did computer work and "ballistic armor" developments projects for the government.  AIKENS also falsely represented that he had a multi-million-dollar CBD business related to a company called New Day Oils.

42.　　Based upon these misrepresentations, on or about October 3, 2018, and on or about January 21, 2019, SR entered into a "Consulting Partnership" agreements with AIKENS and Red Thread in which AIKENS agreed to design and produce social media automation tools and SEO services for web trafficking, "guaranteed sales conversions totaling $2,400,000," credit card processing, inventory systems, and the production of CBD gummy bears for SR.

43.　　Between in and around July 2018, and August 2019, SR made payments to AIKENS totaling approximately $649,168.00 for the software, payment processing, inventory system, and gummy bears; however, AIKENS failed to produce and deliver the promised services and products, and falsely blamed the delays and incomplete work on purported website repairs, software programming issues, or payment processing errors.

<u>Client SA</u>

44.　　At all times material to this Indictment, SA owned a real estate company that advertised vacation real estate rentals to the public.

45.　　In and around February 2020, AIKENS offered to produce for SA a mobile app in which a user, similar to Airbnb, could perform online reviews and make reservations of rental properties.

46.     AIKENS falsely represented to SA that he previously developed a computer security program for the federal government, and also that he had a crew building a "PCR" machine for the federal government.

47.     Based upon these misrepresentations, between in and around February and March 2020, SA paid AIKENS approximately $23,200.00 to produce the mobile app; however, AIKENS failed to produce the app, and instead made false excuses to SA for the delay such as that he needed to redo the design or that he needed attorneys to review the terms of service.

<u>Client MF</u>

48.     At all times material hereto, MF operated an online CBD oil company known to the grand jury as PF that produced CBD products.

49.     In and around April 2019, MF approached AIKENS to create a credit card processing system for buyers of PF's products.  AIKENS falsely represented that his company could create an integrated processing system, an inventory tracking system, and labels for his CBD merchandise.

50.     Based upon these misrepresentations, in and around May 2019, MF entered into an agreement with AIKENS and Red Thread Tech, whereby AIKENS agreed by May 31, 2019, to produce a virtual integration word press application and a credit card processing system for a flat fee of $10,000.00.

51.     Between approximately in and around April 2019 and May 2019, MF paid AIKENS approximately $20,600 for the agreed upon services; however, AIKENS failed to produce either the integrated credit card processing system, inventory tracking, or labels for MF products, and falsely blamed delays on purported shipping issues, "warehouse floods," or third party delays.

<u>Client TC</u>

52.     At all times material to this Indictment, TC operated a CBD oil company known to the grand jury as PG which sold CBD products for humans and pets.

53.     In and around February 2019, PG's representative met with AIKENS to inquire about the purchase of a pill press/capsule machine.  AIKENS falsely represented that his company could order and deliver a pill press/capsule machine to PG.

54.     Based upon these misrepresentations, on or about February 18, 2019, PG entered into an "Industrial Equipment Purchase Agreement" with AIKENS pursuant to which AIKENS's company, Avare Supply, agreed to sell a pill press/capsule machine to PG for the sum of $96,000.00, with $48,000.00 due upon execution of the agreement, and another $48,000.00 due within 14 days of TC's acceptance.

55.     On or about February 20, 2019, DM paid AIKENS $48,000.00 for the pill press/capsule machine; however, AIKENS failed to procure the pill press/capsule machine, and made false excuses such as the need for software to operate the machine, and instead demanded an additional $30,000 from PG to develop the software integration for the pill machine.

<u>THE WIRE COMMUNICATIONS</u>

56.     On or about the dates set forth below, in the Western District of Pennsylvania and elsewhere, the defendant,  SETH ALLEN AIKENS, II, for the purposes of executing the aforesaid scheme and artifice to defraud, and in attempting to do so, did transmit and cause to be transmitted in interstate commerce by means of wire communications, certain signs, signals, sounds, and any appropriate combination of the three, that is, AIKENS caused clients to initiate the following electronic transmissions of funds from financial accounts they controlled to financial accounts controlled by AIKENS, each such interstate wire transfer being a separate count herein:

9

| COUNT | DATE | WIRE TRANSFER |
|-------|------|---------------|
| 1 | 08/29/2018 | $3,000.00 from NB from Chase Ink. acct. ending in 1073, to Personal checking Clarion FCU acct. ending in 6009 (hereinafter, CFU acct. 6009). |
| 2 | 08/31/2018 | $2,105.00 from NB Capital One acct. ending in 7459, to CFU acct. 6009. |
| 3 | 09/14/2018 | $1,700.00 from CG from Susquehanna Valley FCU acct. ending in 4836, to CFU acct. 6009. |
| 4 | 10/03/2018 | $6,000.00 from SR from Chase Bank acct. ending in 3493, to CFU acct. 6009. |
| 5 | 11/02/2018 | $900.00 from CG from Susquehanna Bank acct. ending in 7893, to CFU acct. 6009. |
| 6 | 01/15/2019 | $10,000.00 from SR from Amex card acct. ending in 1011 (hereafter Amex acct. 1101) to New Day Oils PayPal acct. ending in 1894 (hereinafter, New Day Oils PayPal acct.1894). |
| 7 | 01/31/2019 | $45,000.00 from SR from Amex acct. 1011, to New Day Oils PayPal acct. 1894. |
| 8 | 02/07/2019 | $40,000.00 from SR from Amex acct. 1011, to New Day Oils PayPal acct. 1894. |
| 9 | 02/20/2019 | $48,000.00 from CE, Inc., JP Morgan Chase acct. ending in 2138, to New Day Oils LLC, Clarion FCU acct. ending in 5240 (hereinafter, CFU acct. 5240). |
| 10 | 02/26/2019 | $36,000.00 from SR from Chase Ink acct. ending in 3493, to New Day Oils Pay Pal acct. 1894. |
| 11 | 02/28/2019 | $33,000.00 from KGP LLC Huntington acct. ending in 9416 (hereinafter, Huntington acct. 9416), to New Day Oils CFU acct. ending in 2404. |
| 12 | 03/19/2019 | $40,000.00 from KGP LLC Huntington acct., to New Day Oils LLC CFU acct. ending in 5240. |
| 13 | 04/04/2019 | $45,000.00 from KGP  Huntington acct. 9416, to New Day Oils LLC CFU acct. 5240. |
| 14 | 04/09/2019 | $29,500.00 from KGP LLC Huntington acct. 9416, to New Day Oils LLC CFU acct. 5240. |
| 15 | 04/16/2019 | $39,800.00 from KGP LLC Huntington acct. 9416 to New Day Oils CFU acct. 5240. |
| 16 | 03/10/2020 | $4,500.00 from OPT Web Properties LTD Chase Visa Card acct. ending in 0934, to Terrovia LLC Stripe Account ending in XKy8 (hereinafter, Stripe acct.) |
| 17 | 03/21/2020 | $4,000.00 from SA personal Discover Card acct. ending 1557, to Stripe acct. |

All in violation of Title 18, United States Code, Section 1343.

## COUNTS EIGHTEEN THROUGH TWENTY-FOUR

The grand jury further charges:

57.     The allegations contained in paragraphs 1 through 55 are incorporated as though set more fully at length herein.

58.     On or about the following dates, in the Western District of Pennsylvania and elsewhere, the defendant, SETH ALLEN AIKENS, II, for the purpose of executing the aforesaid scheme and artifice to defraud, and in attempting to do so, caused the following items to be mailed and delivered by the United States Postal Service or commercial carrier, by letter and package, which mailings contained personal or certified checks from AIKENS's clients, each such mailing being a separate count herein:

| Count: | Date: | Sender Address | Recipient Address |
|--------|-------|----------------|-------------------|
| 18 | 4/26/2019 | FedEx package #786893713724 from MF, 42525 Bradshaw Dr., Temecula, CA 92592 | Seth Aikens Red Thread Technology LLP, 718 S. 5th Ave. Clarion, PA 16214 |
| 19 | 5/8/2019 | FedEx package #787112363489 from MF, 42525 Bradshaw Dr., Temecula, CA 92592 | Red Thread Tech, 718 S. 5th Ave. Clarion, PA 16214 |
| 20 | 5/14/2019 | USPS regular mail from MF, 42525 Bradshaw Dr., Temecula, CA 92592 | Seth Aikens Red Thread Technology, LLC, 718 S. 5th Ave. Clarion, PA 16214 |
| 21 | 7/10/2019 | USPS Priority Mail Express #EM027545960US from SR, 36718 Detroit Rd., Avon, OH 44011 | GA 718 S. 5th Ave. Clarion, PA 16214 |
| 22 | 7/17/2019 | FedEx package #775767855748 from KGP 36718 Detroit Rd., Avon, OH 44011 | GA 718 S. 5th Ave. Clarion, PA 16214 |
| 23 | 08/15/2019 | USPS Priority Mail Express #EM027546979US from KGP, 36718 Detroit Rd., Avon, OH 44011 | GA 718 S. 5th Ave. Clarion, PA 16214 |
| 24 | 08/15/2019 | UPS package #1ZR87A170196488400 from CE 8429 Lorraine Rd., Lakewood, FL 34202 | GA 718 S. 5th Ave. Clarion, PA 16214 |

All in violation of Title 18, United States Code, Section 1341.

## COUNTS TWENTY-FIVE THROUGH THIRTY

The grand jury further charges:

59.     The allegations contained in paragraphs 1 through 55 are incorporated as though set more fully at length herein.

60.     On or about the following dates listed below, in the Western District of Pennsylvania and elsewhere, the defendant, SETH ALLEN AIKENS, II, did knowingly engage in monetary transactions affecting interstate commerce from criminally derived property with a value greater than $10,000.00, which property was derived from a specified unlawful activity, that is, wire fraud and mail fraud as set forth in Counts One through Twenty-Four, well knowing that the funds were derived from a criminal offense:

| Count | Date | Monetary Transaction |
|-------|------|----------------------|
| 25 | 02/01/2019 | Purchase of LS Tractor, SN: LS2293002655 and accessories for $19,575.00 from Robison Equip., Inc. |
| 26 | 02/07/2019 | Purchase of 2011 GMC Sierra Truck, VIN: 1GT424C83BF145196 for $24,880.00 from Prestige Auto Group |
| 27 | 02/11/2019 | Purchase of 2009 Mercedes Benz C63 AMG, VIN: WDDGF77X19F235239 for $20,423.97 from Baglier Buick GMC |
| 28 | 03/07/2019 | Purchase of 2014 Dodge Ram Truck, VIN: 3C7WRNFL0EG179872 for $31,500.00 from Tracey Road Equip. |
| 29 | 04/11/2019 | Purchase of Kubota Excavator and accessories for $49,988.37, from Walker and Walker Equipment |
| 30 | 04/22/2019 | Purchase of 2012 Dodge Ram 2500, VIN: 3C6TD5HT7CG176418 for $11,500.00 from Coventry Auto Sales |

All in violation of Title 18, United States Code, Section 1957(a).

**FORFEITURE ALLEGATIONS**

The United States hereby gives notice to the defendant SETH ALLEN AIKENS, II, charged in Counts One through Twenty-Four that, upon his conviction of any such offenses, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offenses to forfeit any property constituting or derived from proceeds obtained directly or indirectly as a result of such offenses, including, but not limited to, the following described property:

**REAL PROPERTY**

All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 60 Rocky Grove Lane, Crown, PA 16220, Clarion County, Pennsylvania, Parcel Number: 10-030-106-000-00, Deed Information: Book 2019 / Page 2878.

**PERSONAL PROPERTY**

a) One (1) New LS Tractor, SN: LS2287001499;

b) One (1) New LS Tractor SN: LS2309004120 and Power Equipment;

c) One (1) New LS Tractor, SN: LS2314000424;

d) One (1) Pressure Washer and Accessories; and

e) One (1) 2020 Prowler Pro Crew (Side by Side).

**MONEY JUDGMENT**

A sum of money equal to $1,367,185.20 in United States currency.

The United States hereby gives notice to the defendant,  SETH ALLEN AIKENS, II, charged in Counts Twenty-Five through Thirty that, upon his conviction of any such offense, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982, of all property involved in such offense of conviction in violation of Title 18, United States Code, Section 1957, or conspiracy to commit such offense, and all property traceable to such property, including but not limited to, the property as described above.

## SUBSTITUTE ASSETS

If any of the above-described forfeitable property, as a result of any act or omission of the defendant,

(1) cannot be located upon the exercise of due diligence;

(2) has been transferred or sold to, or deposited with, a third party;

(3) has been placed beyond the jurisdiction of the Court;

(4) has been substantially diminished in value; or

(5) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21 United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c) and Title 18, United States Code,

14

Section 982(b), to seek forfeiture of any other property of the defendant, SETH ALLEN AIKENS,

II, up to the value of the forfeitable property described above.

A True Bill.

FOREPERSON

CINDY K. CHUNG
United States Attorney
PA ID No. 317227

GREGORY C. MELUCCI
Assistant United States Attorney
PA ID No. 56777

15