UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>SETH AIKENS,<br><br>Defendant. | Case No.: 2:22-CR-119<br><br>Filed Electronically |

### DEFENDANT'S FINDINGS OF FACT & CONCLUSIONS OF LAW

AND NOW, comes the Defendant, Seth Aikens, by and through Counsel, Frank C. Walker II, Esquire, and FrankWalkerLaw, and moves this Honorable Court to enter an Order Dismissing the Indictment, and avers as follows in support thereof:

### BACKGROUND

Seth Aikens ("Mr. Aikens" hereinafter) was named in a superseding indictment at the above captioned Criminal Number, with counts 1 through 17 for wire fraud, counts 18 through 24 for mail fraud, and counts 25 through 30 for money laundering. Mr. Aikens has entered a plea of NOT GUILTY.

On May 2, 2025, a motions hearing was held where this Court heard Mr. Aikens' Motion to Dismiss for Spoliation of Evidence, along with his other pretrial motions. [Doc. 76] The Court ordered both Mr. Aikens and the Government to file Findings of Fact and Conclusions of Law relative to the motion to dismiss. [Doc. 76] This herein brief follows.

### FINDINGS OF FACT

The government executed search warrants in this case and obtained several terabytes of data within encrypted drives which contained Mr. Aikens' personal files, projects, client projects, backup files, and case related information. Simply put, while terabytes of data were recovered, there are large swaths of data, which are exculpatory in nature, were

corrupted, destroyed, or have yet to be disclosed to Mr. Aikens. At the evidentiary hearing, the Court noted, and the Government stated, that the encrypted files which were never disclosed were "available," but that Mr. Aikens had not gone to see it. [Hr'g Tr. 19-20] The Government claimed that the silver binder which contained all the encryption keys were recovered and would be made available to Mr. Aikens. [Hr'g Tr. 28-29]

After the hearing, Mr. Aikens and the undersigned met with the HSI investigators to see the undisclosed evidence, along with the documents containing encryption keys and passwords, however, much of these were missing. Mr. Aikens requested the "papers listing passwords" which were specifically logged as seized property, however, only a small packet of papers, a fraction of what was documented as seized, was produced. The passwords where were provided were functional and led to real accounts and data being accessed, but nothing pertinent to the present case. The Government had two (2) silver binders, but both were missing most of their contents, with one showing visible damage. Of key importance is that the third binder was completely missing. In sum, while thirty-one documents containing passwords were recovered and recorded, the Government has produced only a handful. Similarly, the USB backup containing passwords was also missing.

Additionally, the MacBook was missing its hard drive. Agent Coleman was repeatedly unable to access the device, eventually removing the back portion of the device and discovered it was missing its hard drive. Agent Coleman did not then offer or go receive the forensic image that was supposedly made.

The following evidence is inaccessible to Mr. Aikens:

1. Evidence relating to Cherotti Enterprises ([Doc. 70-1, p.426]), including

   a. All email records for AvareSupply and Order Agreement;

   b. Software related to ZuRI system Connection;

   c. Additional phone call recordings;

   d. Full text message communications;

2. Evidence relating to Marco/PurestFormCBD ([Doc. 70-1, p.426]), including

   a. Full text message communications;

   b. Entire inventory software, log backup, and all related files;

   c. Same inventory system and payment processing as ZuRI;

3. Evidence relating to Heartbeat Keepsakes/Meet Your Miracle ([Doc. 70-1, p.426]), including:

   a. Original mockup application IONIC;

   b. Original mockup design kit for Ionic;

   c. Secondary PHP application;

   d. Original HBKS website backup;

   e. Meet your miracle peer JS project files;

   f. Complete backup showing website security analysis;

   g. In person recordings;

4. Evidence relating to ZuRi/Kaizen Systems ([Doc. 70-1, p.426-27]), including

   a. Four (4) backup files for the original website built;

   b. Original website backup from Aaron Cadena;

   c. Two (2) backup files for inventory system;

   d. Additional in person recordings;

    e. All files relating to the "Mail Fraud" allegations showing Scott Raymond's approval of employee actions;

    f. Sign off sheets for all work done;

    g. E01 computer image;

5. Evidence relating to The Brute Cam Project ([Doc. 70-1, p. 427-28]), including

    a. Build project files;

    b. Design files, such as Logo, AppScreens, etc.;

    c. Website files;

    d. App Website files;

    e. WhiteLabel Portal Files;

    f. Image Processing Files;

    g. IOS Project files;

    h. Android project files;

    i. Project timeline and workflow;

    j. Server logs;

    k. Text message communications;

    l. Receipt for repayment;

6. Evidence relating to Erick Merryman ([Doc. 70-1, p. 428]), including

    a. Collection of files relating to project development;

    b. Android application for Bluetooth lighting control;

    c. Collection of files relating to GPS tracking and customization;

    d. Website and branding package;

    e. Source project files for the app;

    f.   Project timeline and workflow;

    g.   Server logs;

    h.   Video of completion;

    i.   Text message communications;

7. Evidence relating to Scott Andrus ([pain. 70-1, p. 427-28]), including

    a.   CBD website;

    b.   Garnered gardens website;

    c.   Initial App versions;

    d.   Deployment related files;

    e.   Text message communications;

    f.   LLC Loan Agreements and ledger for LLC to LLC loans;

    g.   Meeting minutes for LLC

8. Work product for ZuRi system demonstrations, mobile application demonstrations, and GPS Tracking System Demonstrations [Doc. 70-1, p. 428];

9. Video demonstrations of functioning applications, such as the E911 app, reservation and booking systems app, PrestFormCBD payment processing plugin, Heartbeat Keepsake app; and

10. Audio recordings with clients;

In support of the above-referenced destroyed evidence, as the pieces are not available due to the spoliation, the following exhibits show the existence and legitimacy of the evidence:

1. Exhibit 39 – Proof of the backup files and the All-in-One backup on desktop with the website open;

2. Exhibit 40 – Sign off sheets referenced (which are missing in Government disclosure);

3. Exhibit 41 – Proof of bulk documents missing;

4. Exhibit 42 - Scott Raybuck's confirmation that work was completed.

During the HSI meeting, Mr. Aikens also discovered there is a marked lack of chain of custody, which may, in part, explain the spoliation of the evidence. To date, the Government has provided no documentation identifying which agents handles specific devices, who was responsible for password documentation, who has attempted access, or who was present hen devices were damaged.

In total, in the meeting with the HSI investigator, it became abundantly clear that the above-referenced evidence, which is exculpatory in nature, were missing and spoliated.

## APPLICABLE LAW

### *Constitutional Protections and Government's Obligations*

The Government must disclose exculpatory evidence, which is evidence that is material to either guilt or to punishment. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). This is supported by the Constitutional protections of the Fifth and Sixth Amendments, the former providing Due Process to criminal defendants and prohibiting conduct which "shocks the conscience" (*Rochin v. California*, 342 U.S. 165, 172 (1952)), and the latter guaranteeing the right to present a complete defense. *California v. Trombetta*, 467 U.S. 479, 485 (1984). Indeed, the right to Due Process and present a complete defense cannot be accomplished if exculpatory evidence is not disclosed to a defendant. Additionally, chain of custody is a fundamental requirement that ensures Due Process and the right to a complete defense. *See Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009).

### ***Spoliation of Evidence***

Spoilation is defined as the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation. *Paramount Pictures Corp. v. Davis,* 234 F.R.D. 102, 110 (E.D. Pa. 2005) (*quoting Mosaid Techs., Inc. v. Samsung Elecs. Co.,* 348 F. Supp. 2d 332, 335 (D.N.J. 2004)).[1] When spoliation occurs in criminal cases, the proper remedy may in-fact be dismissal of the indictment. *United States v. Dudenhoefer*, No. 1:21-cr-39, 2025 U.S. Dist. LEXIS 4902, at *14 (W.D. Pa. Jan. 10, 2025).

As this Court has previously reasoned in *United States v. Miah*, No. 21-110, 2021 U.S. Dist. LEXIS 227689, at *7 (W.D. Pa. Nov. 29, 2021), in making a determination that spoliation of evidence occurred, a court must find that: "(1) the evidence was in the party's control; (2) the evidence is relevant to the claims or defenses in the case; (3) there has been actual suppression or withholding of evidence; and, (4) the duty to preserve the evidence was reasonably foreseeable to the party." *Bull v. UPS*, 665 F.3d 68, 73 (3d Cir. 2012) (*citing Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 334 (3d Cir.1995)).

If a defendant demonstrates that evidence has been subject to spoilation, the Court may impose sanctions, such as the dismissal of a claim or claims, suppression of evidence, and/or an adverse inference. *Id.* at 110-11. However, in exercising its

---

[1] Spoilation is usually referenced in instances where evidence has been altered or destroyed," and "a finding of bad faith is pivotal to a spoliation determination.'" *United States v. Porter*, No. 18-68, 2019 U.S. Dist. LEXIS 142423, 2019 WL 3972822, at *6 (W.D. Pa. Aug. 22, 2019) (quoting *Bull*, 665 F.3d at 73, 79, and citing *Brewer*, 72 F.3d at 334 ("'No unfavorable inference arises when the circumstances indicate that the document or article in question has been lost or accidentally destroyed, or where the failure to produce it is otherwise properly accounted for.'")

discretion, the Court must consider the following factors: "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party, and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future." *Id.* (quoting *Schmid v. Milwaukee Elec. Tool Corp.,* 13 F.3d 76, 79 (3d Cir. 1994)).

Regarding the first factor—degree of fault—"the Court must consider whether [the party that destroyed the evidence] intended to impair the ability of the other side to effectively litigate its case." *Id.* (quoting *In re Wechsler,* 121 F. Supp. 2d 404, 415 (D. Del. 2000) (*citing Brewer v. Quaker State Oil Ref. Corp.,* 72 F.3d 326, 334 (3d Cir. 1995)).

With respect to the second factor, prejudice, "the Court should take into account whether [the party that did not destroy the evidence] had a meaningful opportunity to examine the evidence in question before it was destroyed.*" Id.* at 112. In deciding on a sanction, the Court should choose the "least onerous sanction corresponding to the willfulness of the destructive act and the prejudice suffered by the victim.*" Id.* at 111; *United States v. Bunty*, 617 F. Supp. 2d 359, 370 (E.D. Pa. 2008).

## **CONCLUSIONS OF LAW**

Here, the Government failed to preserve digital evidence retrieved from searches of Mr. Aikens' hard drives, which violates their obligations under *Fed.R.Crim.P. 16*, *Brady v. Maryland*, 373 U.S. 83 (1963), and even U.S. Magistrate Judge Maureen P. Kelly's ORDER for the Government to disclose *Brady* materials ([Doc. 12]).

First, evidence was spoliated. As clearly stated hereinabove, copious amounts of evidence was spoliated, including a silver binder with passwords, a USB device, a MacBook hard drive, and RAM keys.

Second, the fault rests solely on the Government, and the degree is significant. The Government was in exclusive control of the evidence. It is exclusively the Government's duty to preserve this evidence. *Brady*, 373 U.S. 83. The evidence that was spoliated is not just relevant, but exculpatory and would tend to exonerate Mr. Aikens. For example, the MacBook contains information on Erick, Ryan, and Scott Raybuck's website, backup files from Aaron Cadena, files relating to the Bluetooth lighting system, Brute Cam's iOS app, and more. The result of the missing evidence is that exculpatory evidence is missing, and it was solely the Government in control of this evidence.

Third, Mr. Aikens is suffering extreme prejudice due to the spoliation, not only because he was unable to have a meaningful opportunity to examine the evidence prior to spoliation, but also because it was exculpatory in nature. The reality of the situation is that the encrypted files that were not destroyed or are missing is that they cannot be viewed due to modern encryption protocols. Without the encryption keys in the missing silver binder, the evidence is indefinitely unavailable.

Fourth, there is no lesser sanction that will avoid substantial unfairness because the degree of fault of the Government, extreme prejudice Mr. Aikens is suffering, and his Constitutional rights to Due Process and right to present a defense, when factored together, leave only one (1) proper remedy—dismissal. Looking to *Miah* for guidance, it shows that dismissal is a proper remedy. In *Miah*, the defendant controlled the evidence and chose to delete it prior to the Government having the opportunity to preserve the

evidence. Here, the Government had exclusive control of the documents, binders, and devices containing the exculpatory information *and the encryption keys and passwords*. In *Miah*, the defendant provided no specific examples of destroyed evidence. Here, Mr. Aikens has establishes specific instances of exculpatory evidence that was destroyed. [*See Doc. 70-1, p.426-28*]

In sum, looking at all of the *Brewer* factors, as contemplated in *Miah*, shows that here (1) evidence was in-fact spoliated, (2) it was the Government's exclusive fault and to a significant degree, (3) Mr. Aikens is suffering extreme prejudice, and (4) no lesser sanction other than dismissal is warranted. [2]

Finally, see attached Exhibits 1-62, each of which being photos and evidence of the spoliation which occurred in this case.

## CONCLUSION

**WHEREFORE**, because the permanent loss of access to this evidence has materially prejudiced Mr. Aikens' ability to prepare his defense and undermines any semblance of due process, such can only be remedied by the dismissal of the charges within the indictment.

Respectfully Submitted,

*/s/ Frank C. Walker II*
Frank C. Walker II

PA I.D. No. 94840
WV I.D. No. 11853

FrankWalkerLaw

---

[2] At the request of Mr. Aikens, undersigned counsel incorporates by reference, Mr. Aiken's supplemental findings of fact and conclusions of law as though set forth at length herein.

                                                          3000 N. Lewis Run Road  
                                                          Clairton, PA 15025  
                                                          412.405.8556 Office  
                                                          412.202.9193 Fax

Date:  July 23, 2025                                            Counsel for Seth Aikens