**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 22-119 |
| | ) | |
| SETH ALLEN AIKENS, II | ) | |

**MEMORANDUM OPINION**

**I.     INTRODUCTION**

Defendant Seth Allen Aikens, II is charged in a 30-count Indictment in this case with the following: 17 counts of wire fraud, in violation of 18 U.S.C. § 1343, for conduct occurring on various dates between August 29, 2018 and March 21, 2020; 7 counts of mail fraud, in violation of 18 U.S.C. § 1341, for conduct occurring on various dates between April 26, 2019 and August 15, 2019; and, 6 counts of money laundering, in violation of 18 U.S.C. § 1957(a), for conduct occurring on various dates between February 1, 2019 and April 22, 2019.  (Docket No. 3).

Presently before the Court is Defendant's Motion for a *Franks* Hearing, which is opposed by the Government.  (Docket Nos. 61; 67 at 15-20; 70 at 4-5).  After careful consideration of the parties' respective positions, the Court finds that Defendant has not established that he is entitled to a *Franks* hearing, thus his Motion will be denied.

**II.     DEFENDANT'S MOTION FOR A *FRANKS* HEARING**

Defendant argues that Special Agent Scott E. Fell's affidavit in support of a warrant to search the premises at 60 Rocky Grove Lane, Crown, Pennsylvania (the "Affidavit") did not establish probable cause to search certain outbuildings, vehicles, a trailer, and a storage container located there.  (Docket No. 61 at 1-2).  According to Defendant, the Affidavit "made clear

1

assertions as to the probable cause regarding the residence and electronic devices therein," but it did not include any assertions concerning a detached garage, a detached barn, an enclosed box trailer, three vehicles, and a large metal cargo container. (*Id.* at 5). Defendant also claims that the Affidavit "contained reckless misstatements of fact and material misrepresentations" and it also omitted material information. (*Id.* at 2, 5). He additionally contends that the good faith exception to the exclusionary rule does not apply. (*Id.* at 6-7). Accordingly, Defendant advocates that he is entitled to hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), and ultimately the evidence seized during the search should be suppressed. (*Id.* at 7).

The Government responds that Defendant is not entitled to a *Franks* hearing because he has not made a preliminary showing of an intentional or reckless misstatement or omission of fact from the Affidavit. (Docket No. 67 at 17). Rather, Defendant actually challenges the magistrate judge's probable cause finding under the guise of a *Franks* motion. (*Id.* at 15, 17). The Government argues that such challenge fails because the Affidavit established probable cause to search the various outbuildings, vehicles, trailer, and storage container situated within the curtilage of Defendant's residence. (*Id.* at 17).

Defendant subsequently filed a Reply contesting the Government's arguments and repeating that "there [were] material omissions, misstatements, and misrepresentations made to the magistrate [judge] which directly undercut the probable cause determination." (Docket No. 70 at 4-5). Defendant's Motion is now ripe for disposition.

A.    **Background**

According to the Affidavit, which is attached as Exhibit 2 to the Government's Response, (*see* Docket No. 67-2), Special Agent ("SA") Fell is employed with the U.S. Department of Homeland Security, Homeland Security Investigations, and he has approximately 19 years of

experience, including investigating violations of immigration, customs (import/export), financial, narcotics, and other federal criminal laws. (*Id.*, ¶¶ 2, 3). SA Fell averred that probable cause existed for a warrant to search the premises known as 60 Rocky Grove Lane, Crown, PA 16220, referred to as the "SUBJECT PREMISES," and further described in Attachment A to the Affidavit. (*Id.*, ¶¶ 1, 72).

Attachment A specifies that the property to be searched is "the premises and curtilage of: 60 Rocky Grove Lane, Crown, PA 16220." (Docket No. 67-2 at 41). Attachment A states that the premises "contain a two (2) story house, a detached garage, and a detached large barn" and that "[t]he detached garage, barn, vehicles, trailers, and cargo container that have been observed on the premises are described in more detail in the paragraphs and photographs provided below." (*Id.*). As Attachment A further states, "[a]lso to be searched are all rooms of the buildings described above and below, including any safes, storage containers, closets, and any other sheds and garages associated with the premises." (*Id.*). Next, Attachment A includes photographs of the residence, a detached garage (accompanied by a written description), and a detached barn (also with a written description). (*Id.* at 42-44). Attachment A additionally specifies that the following vehicles, trailer, and container on the Subject Premises are to be searched: (1) 2009 black Mercedes Benz, PA registration KWZ 8822 (pictured); (1) 2011 gray GMC pickup truck, PA registration ZNC 3645 (pictured); (1) red enclosed (boxed) tow behind trailer; (1) gray metal cargo container; and (1) dark colored pickup truck (make and model unknown). (*Id.* at 45).

As the foregoing recitation makes clear, SA Fell's Affidavit precisely described and defined the Subject Premises to be searched to include not only Defendant's residence, but also the buildings, vehicles, trailer, and storage container referenced on Attachment A.

According to the Affidavit, an investigation of Defendant was initiated by the United States

Attorney's Office after receiving information from witnesses and victims, who stated that they provided money to Defendant to fund purported business opportunities, including product development, finished products, and equipment, mobile applications (Apps), and website services. (Docket No. 67-2, ¶ 6). As SA Fell averred, in almost all cases, the victims advised that the projects outlined in their agreements with Defendant were never completed and/or they never received the requested products or services from him. (*Id.*). SA Fell and other investigators interviewed witnesses and victims and reviewed documentation provided from their respective businesses, which reflect that Defendant engaged in fraud during his business dealings with the victims. (*Id.*, ¶ 7). Defendant allegedly perpetrated the scheme by offering to build electronic devices, such as GPS devices for commercial vehicles and cellular trail cameras, to provide CBD (i.e., Cannabidiol) related products and manufacturing equipment, and to develop websites and mobile applications, along with the operating software, applications, and website services related to these products. (*Id.*).

Based on SA Fell's training and experience, he averred that there was probable cause to believe that Defendant committed violations of federal law, including mail fraud, wire fraud, and money laundering. (Docket No. 67-2, ¶ 10). SA Fell further averred that there was probable cause to search the Subject Premises, as described in Attachment A, for evidence of those crimes. (*Id.*).

As the Affidavit explains, the investigation revealed that Defendant made the victims believe they were paying him and/or his companies to build the abovementioned products and investing in the proposed future sales of finished products to businesses and/or individual consumers. (Docket No. 67-2, ¶ 11). Two victims stated that Defendant provided them with documents and other evidence, which purported to show that he had contracts with large companies such as Progressive Insurance and Cabela's. (*Id.*). However, these companies

responded to requests from investigators indicating that they had no record of agreements, projects, or contracts with Defendant. (*Id.*). Defendant also represented to victims that he had worked with the U.S. Department of Defense and other large government agencies on various projects. (*Id.*, ¶ 12). Here again, in response to requests from SA Fell, the agencies advised that they could not find any association with Defendant. (*Id.*).

As further averred in the Affidavit, several witnesses and victims who were interviewed advised that Defendant claimed he made millions of dollars in his prior projects and business dealings. (Docket No. 67-2, ¶ 13). Defendant provided victims with copies or screen shots of his alleged bank statements, which reflected bank account balances in the millions of dollars. (*Id.*). As SA Fell explained, a review of Defendant's financial information, which is described in detail in the Affidavit, did not support his claims. (*Id.*, ¶¶ 13, 21-23). Notably, an inquiry for Defendant's reported wages conducted by the U.S. Department of Labor Office of Inspector General found no reported wages for the social security number associated with him from 2009 to July 23, 2021. (*Id.*, ¶ 21). Further, investigators reviewed the bank accounts that were able to be identified for Defendant, his wife, and their associated companies, none of which corroborated his claims to victims that he had account balances in the millions of dollars. (*Id.*, ¶ 23). Rather, the investigators' review revealed that the overwhelming majority of the deposits were associated with the victims. (*Id.*). To that end, the victims advised that they paid Defendant by cash, checks, PayPal, credit card, wire transfer, and/or Intuit and Stripe payments. (*Id.*, ¶ 19).

The Affidavit contains detailed information concerning Defendant's bank accounts and credit union accounts, and it describes the purchases of vehicles, real property, and personal goods with money associated with victims who paid Defendant for projects and services they never received. (*See* Docket No. 67-2, ¶¶ 25-37). According to records investigators received from

victims and a review of Defendant's subpoenaed bank records, SA Fell averred that Defendant's primary income from approximately 2017 to 2019 was money he received from victims identified in this case. (*Id.*, ¶ 65).

Based on SA Fell's training and experience, individuals involved in the type of illegal activity described in the Affidavit often maintain records and documents that relate to their illicit activities, which are often stored at the individuals' residence and/or businesses. (Docket No. 67-2, ¶ 76). Here, Defendant appeared to have operated his businesses from the Subject Premises (as described on Attachment A). (*Id.*). The records and documents that are often presented to victims to give the appearance of a legitimate business enterprise frequently include requests for quotes, agreements, contracts, invoices, correspondence, memoranda, e-mails, notes, daily calendars, purchase orders, shipping documents, receipts, facsimiles, delivery records, inventory documents, and sales records. (*Id.*). These documents are often created on computers and stored on electronic media, as described in detail in the Affidavit. (*Id.*, ¶¶ 76-86). In light of SA Fell's training and experience and the information contained in the Affidavit, he averred that there was probable cause to believe that evidence of mail fraud, wire fraud, money laundering, and other violations of federal law would be found at the Subject Premises (as described in Attachment A). (*Id.*, ¶ 87).

## B.    Legal Standard – *Franks* Hearing

In *Franks*, the Supreme Court articulated the rule governing situations involving allegedly misleading search warrant affidavits, holding that a defendant has the right to an evidentiary hearing to challenge the truthfulness of statements made in an affidavit establishing probable cause if certain requirements are met. *Franks*, 438 U.S. at 155-56. To obtain a hearing, *Franks* requires a defendant to make a substantial preliminary showing that the affidavit contained a false statement, which was made knowingly and intentionally or with reckless disregard for the truth,

and which is necessary to the finding of probable cause. *Id.* at 155–56, 171. In order to make this showing, the defendant cannot rest on conclusory allegations or a "mere desire to cross-examine." *Id.* at 171. Rather, he must specifically identify the alleged false statements or omissions in the affidavit[1] and present an offer of proof contradicting the affidavit, including materials such as affidavits or sworn or otherwise reliable statements of witnesses, or provide a satisfactory explanation of their absence. *Id.*; *see also United States v. Desu*, 23 F.4ᵗʰ 224, 234 (3d Cir. 2022) (citing *United States v. Yusuf*, 461 F.3d 374, 383 n. 8 (3d Cir. 2006)).

"[The] preliminary showing [that a defendant must make] is no light burden and puts the defendant to task by requiring some offer of proof that materially false statements were recklessly or intentionally made." *United States v. Romeu*, 433 F. Supp. 3d 631, 645 (M.D. Pa. 2020) (quoting *United States v. Darby*, No. 1:14-CR-00123, 2015 WL 13344905, at *3 (M.D. Pa. Aug. 19, 2015)). To reiterate, "[t]o make the initial showing, a defendant must allege with specificity what was false in the affidavit, must provide proof, must allege that the affiant had a culpable state of mind, and must allege that the remaining information from the affidavit is insufficient to support a finding of probable cause." *United States v. Yokshan*, 431 F. App'x 170, 173 (3d Cir. 2011) (citing *Franks*, 438 U.S. at 171-72).

If the requirements of the substantial preliminary showing "are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains

---

1    Statements or assertions contained in an affidavit of probable cause are "made with reckless disregard when 'viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported.' " *Wilson v. Russo*, 212 F.3d 781, 788 (3d Cir. 2000) (quoting *United States v. Clapp*, 46 F.3d 795, 801 n. 6 (8th Cir. 1995)). Omissions from an affidavit are made with reckless disregard for the truth if an affiant withholds facts that any reasonable person would know that a judge would want to know. *Id.* at 788. A district court "may properly infer that an affiant acted with reckless disregard for the truth where his affidavit contains an averment that was without sufficient basis at the time he drafted it." *United States v. Brown*, 631 F.3d 638, 649 (3d Cir. 2011). However, when attempting to demonstrate that the affiant included a false statement in a warrant affidavit or omitted material from it, it is insufficient to prove that he acted with negligence or made an innocent mistake. *Franks*, 438 U.S. at 171; *Yusuf*, 461 F.3d at 383.

sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." *Franks*, 438 U.S. at 171-72. However, if the remaining content is insufficient, the defendant is entitled to a hearing.[2] *Id.* at 172.

### C.  Defendant Has Not Established that He is Entitled to a *Franks* Hearing

In light of the prevailing legal standard, Defendant is not entitled to a *Franks* hearing because he has not made the requisite substantial preliminary showing. *See Franks*, 438 U.S. at 171. Defendant failed to make the threshold showing for two reasons: (1) he failed to specifically identify any alleged false statements in the Affidavit or omissions from it; and (2) even if his general assertion of false statements or omissions could be considered, he failed to make an offer of proof showing that SA Fell misstated or omitted information from the Affidavit knowingly and intentionally or with reckless disregard for the truth.

Initially, Defendant has not specifically identified any alleged false statements in the Affidavit, nor has he specified any items that he contends were omitted. Rather, Defendant broadly states that the Affidavit "contains various misstatements and material omissions that render the same invalid," (Docket No. 61 at 5), without further elaboration. (*See also* Docket No. 70 at 4-5) (claiming that "there are material omissions, misstatements, and misrepresentations made to the magistrate," but failing to identify the same). This is directly contrary to *Franks*' requirement that he must specifically identify the false statements or omissions. *See Franks*, 438 U.S. at 171; *see also Yokshan*, 431 F. App'x at 173 ("To make the initial showing, a defendant must allege with specificity what was false in the affidavit . . . ."). Defendant's Motion for a *Franks* hearing fails

---

2      If a *Franks* hearing is held, and the defendant proves by a preponderance of the evidence that the false statements or omissions were made knowingly and intentionally or with a reckless disregard for the truth, and with the affidavit's false material set aside, the remaining content is insufficient to establish probable cause, then the warrant must be voided, and the fruits of the search must be excluded from the trial. *Franks*, 438 U.S. at 156; *see also United States v. Frost*, 999 F.2d 737, 743 (3d Cir. 1993).

on this basis alone.

Nonetheless, even if Defendant's general assertion of false statements or omissions could be considered, he has not made an offer of proof consisting of affidavits or sworn or otherwise reliable statements of witnesses to contradict the Affidavit or to support his contention that SA Fell knowingly omitted material information, nor has he explained the absence of these materials. *See Franks*, 438 U.S. at 171; *Desu*, 23 F.4th at 234; *Yusuf*, 461 F.3d at 383, n. 8; *United States v. Rodriguez-Colon*, 827 F. App'x 188, 190 (3d Cir. 2020) (affirming denial of motion to suppress evidence claiming that affidavit in support of search warrant contained material omissions where the defendant's challenge did not contain an offer of proof). Rather, in a "Client Directed Reply"[3] to the Government's Response to his Motion for a *Franks* hearing, Defendant repeats his claim of "material omissions, misstatements, and misrepresentations" in the Affidavit, stating the following as support for his non-specific assertion:

> Appended hereto as Exhibit A are videos which directly cut against the statements made by the Affiant in the search warrant, therefore more than sufficiently making a substantial preliminary showing as required by *Franks*. Moreover, there are two (2) audio recordings, appended hereto as Exhibit B, which when listened to, unequivocally show that the statements made by the Affiant were materially misrepresenting the truth of the matter.

(Docket No. 70 at 5). Defendant also attached to his "Client Directed Reply" 446 pages of exhibits, simply stating that "Exhibits 1 through 42, which are accompanied [by] Exhibit 46, which expressly describes each exhibit . . . show[s] how each satisfies the requisite substantial

---

3       The origin of the so-called "Client Directed Reply" is somewhat unclear. Although the pleading was signed and filed by Attorney Walker, (*see* Docket No. 70 at 19), the title of the document, "Client Directed Reply," raises a question whether Defendant is attempting an end-run around the prohibition against hybrid representation. Whether or not that may have been the case, it is worth reminding Defendant that he is represented by counsel and cautioning him that hybrid representation is not permitted. *See McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984) (no constitutional right to hybrid representation); *United States v. D'Amario*, 268 F. App'x 179, 180 (3d Cir. 2008) ("The Constitution does not confer a right to proceed simultaneously by counsel and *pro se*, and the District Court was not obligated to consider [the defendant's] *pro se* motions in light of his being represented by counsel on direct appeal.").

preliminary showing." (*Id.*).  Despite providing this assortment of materials, Defendant does not identify or pinpoint any specific items contained therein which contradict the Affidavit or demonstrate that material information was omitted from it.

In summary, Defendant fails the first prong of *Franks* because (1) he failed to specifically identify any alleged false statements or omissions in the Affidavit and (2) he has not presented an offer of proof contradicting the Affidavit and showing that SA Fell knowingly and intentionally made false statements or omitted information from the Affidavit or that he acted with reckless disregard for the truth.  *See United States v. Rivera*, 524 F. App'x 821, 826 (3d Cir. 2013) ("Even if the information provided by the informants was unreliable, [defendant] has offered no evidence that the detective who provided the affidavit either knew that the information was not true or recklessly disregarded its falsity.").  At most, Defendant has made vague allegations of misstatements and omissions which are insufficient to meet his burden for a hearing under *Franks*. *See Desu*, 23 F.4th at 234 (explaining that a defendant cannot "rest on mere conclusory allegations . . . but rather must present an offer of proof contradicting the affidavit, including materials such as sworn affidavits or otherwise reliable statements from witnesses") (quoting *Yusuf*, 461 F.3d at 383, n.8).

D.    **The Affidavit Established Probable Cause for Issuance of the Warrant to Search the Subject Premises**

To the extent Defendant actually challenges Magistrate Judge Kelly's probable cause finding under the guise of a *Franks* motion as the Government suggests, Judge Kelly properly determined that the Affidavit established probable cause for issuance of the search warrant for the Subject Premises.

The legal standard applicable to review of a magistrate judge's determination of probable cause is summarized as follows:

"A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.' " *Illinois v. Gates*, 462 U.S. 213, 236 (1983) (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969)). A trial court exercises "only a deferential review of the initial probable cause determination made by the magistrate." *United States v. Conley*, 4 F.3d 1200, 1205 (3d Cir. 1993) (citing *Gates*, 462 U.S. at 236) (emphasis in original). "[T]he duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed." *Gates*, 462 U.S. at 238 (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)). The deference given to a magistrate's issuance of a warrant "does not mean that reviewing courts should simply rubber stamp a magistrate's conclusions." *United States v. Miknevich*, 638 F.3d 178, 182 (3d Cir. 2011) (internal quotations omitted). Still, " 'the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.' " *United States v. Jones*, 994 F.2d 1051, 1055 (3d Cir. 1993) (internal quotations omitted).

A magistrate's role in issuing a warrant is to "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before [her], including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238. A warrant is to be upheld on review "as long as there is a substantial basis for a fair probability that evidence will be found." *Conley*, 4 F.3d at 1205. **In conducting this assessment, a reviewing court is confined "to the facts that were before the magistrate judge, i.e., the affidavit, and [the court may] not consider information from other portions of the record."** *Jones*, 994 F.2d at 1055. Stated otherwise, the District Court is restricted to viewing only the information confined by the "four corners" of the affidavit before the magistrate. *United States v. Whitner*, 219 F.3d 289, 295-96 (3d Cir. 2000). "The supporting affidavit to a search warrant is to be read in its entirety and in a common sense, nontechnical manner." *Miknevich*, 638 F.3d at 182. This includes "all the circumstances set forth in the affidavit before [her], including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information." *Gates*, 462 U.S. at 238. Further, " 'probable cause is a fluid concept' that turns on 'the assessment of probabilities in particular factual contexts not readily, or even usefully, reduced to a neat set of legal rules.'" *Miknevich*, 638 F.3d at 182 (quoting *United States v. Shields*, 458 F.3d 269, 277 (3d Cir. 2006)). Proof beyond a reasonable doubt is not required. *Id*.

*United States v. Coca*, Crim. No. 14-262, 2016 WL 7013037, at *4 (W.D. Pa. Dec. 1, 2016)

(emphasis added).

    As an initial matter, no evidentiary hearing is required on this matter. The case law makes

clear that this Court's review is confined to the "four corners" of the Affidavit that was before Magistrate Judge Kelly, and we are not to consider information from other portions of the record. *Jones*, 994 F.2d at 1055. Therefore, it would be improper to consider information elicited at a hearing that was not previously submitted to Magistrate Judge Kelly in support of the Affidavit.

Turning to the Affidavit, the information it contains as summarized in detail above establishes more than ample probable cause to search the Subject Premises. It bears repeating that the Affidavit precisely described and defined the Subject Premises to include not only Defendant's residence, but also the buildings, vehicles, trailer, and storage container referenced in Attachment A. Again, Attachment A indicates that the property to be searched is "the premises and curtilage of: 60 Rocky Grove Lane, Crown, PA 16220." (Docket No. 67-2 at 41). To reiterate, Attachment A specifies that the premises "contain a two (2) story house, a detached garage, and a detached large barn" and that "[t]he detached garage, barn, vehicles, trailers, and cargo container that have been observed on the premises are described in more detail in the paragraphs and photographs provided below." (*Id.*). As Attachment A states, "[a]lso to be searched are all rooms of the buildings described above and below, including any safes, storage containers, closets, and any other sheds and garages associated with the premises." (*Id.*). Attachment A additionally states that the vehicles and trailer on the Subject Premises are to be searched, including a 2009 black Mercedes Benz, a 2011 gray GMC pickup truck, a red enclosed (boxed) tow behind trailer, a gray metal cargo container, and a dark colored pickup truck. (*Id.* at 45).

Given this detailed description and definition of the Subject Premises, Defendant is incorrect that SA Fell "asserted facts that relevant evidence would be found in the residence and electronic devices therein, [but] did not assert or provide any facts which would suggest evidence would be found in" the detached garage, the detached barn, the enclosed box trailer, any vehicle,

or the large metal cargo container.  (Docket No. 61 at 1-2).  Rather, in this Court's estimation, the Affidavit makes clear that the information contained in it was provided to establish probable cause to search the Subject Premises, which included the residence *and* all of the other referenced locations.

Based on SA Fell's Affidavit, Magistrate Judge Kelly issued the search warrant for the Subject Premises.  Upon review, this Court finds that the information contained in the "four corners" of the Affidavit was sufficient for Magistrate Judge Kelly to have determined that there was a fair probability that evidence of Defendant's alleged wire fraud, mail fraud, and money laundering would be found in the Subject Premises.  It stands to reason that an individual involved in those illicit activities would maintain records and documents related thereto, and those items would be stored at the individual's residence and/or business, which, in this case was the Subject Premises (once again, very specifically described and defined in the Affidavit to include not only Defendant's residence, but also the referenced outbuildings, vehicles, storage container, and trailer).[4]  To the extent Defendant suggests that there was no nexus between his alleged criminal activity and the Subject Premises, he is incorrect.  It was reasonable for Magistrate Judge Kelly to conclude that documents and records related to Defendant's alleged illicit activities were stored in the Subject Premises under the totality of the circumstances described in the Affidavit.  *See, e.g.,* *Whitner*, 219 F.3d at 296 ("The issuing judge or magistrate may give considerable weight to the

---

[4]    As repeatedly stated, the Affidavit defined the Subject Premises as the "premises and curtilage of: 60 Rocky Grove Lane, Crown, PA 16220," and specified that "[t]he premises contain a two (2) story house, a detached garage, and a detached large barn." (Docket No. 67-2 at 41).  "Also to be searched are the vehicles and trailer on the Subject Premises," which were then further described.  (*Id.* at 45).  Even if the Affidavit did not contain such a detailed description and definition of the Subject Premises, it is well-established that a warrant to search a residence applies to the grounds or outbuildings within the residence's curtilage.  *See, e.g., United States v. Earls*, 42 F.3d 1321, 1327 (10th Cir. 1994) (warrant authorizing search of residence allowed search of all outbuildings, including detached garage, shed, and office, within the curtilage of the residence); *United States v. Zlatkovskiy*, __ F. Supp. 3d __, 2025 WL 1908044, at *5 (E.D. Pa. July 10, 2025) ("Although the shed was 'not directly referenced in [the] warrant,' the search of that structure nonetheless passed constitutional muster because it constituted curtilage.").

conclusions of experienced law enforcement officers regarding where evidence of a crime is likely to be found and is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense.") (citation omitted).  Consequently, the Court finds that Magistrate Judge Kelly had a substantial basis for concluding that probable cause existed for issuance of the warrant to search the Subject Premises.

E.    **Even if Probable Cause Was Lacking, the Good Faith Exception Would Apply to the Warrant**

Even if the Court were to conclude that the warrant was not supported by probable cause, the good faith exception to the exclusionary rule would apply here.  The law applicable to the good faith exception is summarized as follows:

> The Supreme Court has held that evidence derived from a warrant not supported by probable cause is still admissible when obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate judge.  *United States v. Leon*, 468 U.S. 897, 926 (1984). "[T]he purpose of the exclusionary rule - to deter police misconduct - would not be furthered by suppressing evidence obtained during a search 'when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope.' " *United States v. Tracey*, 597 F.3d 140, 150 (3d Cir. 2010) (quoting *Leon*, 468 U.S. at 919–20).

> The question is "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 922.  Indeed, "[t]he mere existence of a warrant typically suffices to prove that an officer conducted a search in good faith and justifies application of the good faith exception."  *United States v. Hodge*, 246 F.3d 301, 307-308 (3d Cir. 2001) (citing *Leon*, 468 U.S. at 922).  The United States Court of Appeals for the Third Circuit has recognized that the good faith exception does not apply in four limited circumstances:

>> 1) where the magistrate judge issued the warrant in reliance on a deliberately or recklessly false affidavit;

>> 2)  where the magistrate judge abandoned his or her judicial role and failed to perform his or her neutral and detached function;

>> 3) where the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely

14

> unreasonable; or
>
> 4) where the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.
>
> *Tracey*, 597 F.3d at 151 (citations omitted).  These limited exceptions "involve conduct that is 'deliberate, reckless, or grossly negligent.' " *Id.* (quoting *Herring v. United States*, 555 U.S. 135 (2009)).

*United States v. Gardenhire*, Crim. No. 15-87, 2017 WL 1105733, at *15 (W.D. Pa. Mar. 24, 2017).

Here, none of the four limited circumstances are present.  As already discussed, the search warrant was not issued in reliance on a deliberately or recklessly false affidavit.  Further, there is nothing in the record to suggest that Magistrate Judge Kelly abandoned her judicial role and failed to act in a neutral and detached manner.  Likewise, any claim that the warrant was so facially deficient that it was not particularized is unsupported by the record.  Finally, the warrant Affidavit is not so lacking in indicia of probable cause that it was entirely unreasonable for law enforcement to rely on it in conducting the search.  As explained, under the totality of the circumstances, the information contained in the Affidavit established probable cause for issuance of the warrant to search the Subject Premises.

In sum, even if the warrant was deemed insufficient, the good faith exception would apply to law enforcement's search of the Subject Premises.  *See United States v. Stearn*, 597 F.3d 540, 567-68 (3d Cir. 2010) (even if affidavit suggesting that the defendant was a drug dealer and connecting his drug activities to a particular house did not provide probable cause to search the house, the good faith exception applied to police officers' search of house pursuant to warrant based on the affidavit; officers executing the warrant were not unreasonable in relying on the magistrate's probable cause determination). The record in this case simply does not support a finding that one of the four limited circumstances which permit the avoidance of the good faith

15

exception apply here.  *See Tracey*, 597 F.3d at 151.  Consequently, suppression is not warranted.

### III.    <u>CONCLUSION</u>

For the reasons discussed herein, Defendant's Motion for a *Franks* Hearing, (Docket No. 61), is DENIED.

An appropriate Order follows.

<u>*s/ W. Scott Hardy*</u>
W. Scott Hardy
United States District Judge

Date:  <u>September 8, 2025</u>

cc/ecf:  All counsel of record