**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 22-119 |
| | ) | |
| SETH ALLEN AIKENS, II | ) | |

**MEMORANDUM OPINION**

## I.    INTRODUCTION

Defendant Seth Allen Aikens, II is charged in a 30-count Indictment in this case with the following: 17 counts of wire fraud, in violation of 18 U.S.C. § 1343, for conduct occurring on various dates between August 29, 2018 and March 21, 2020; 7 counts of mail fraud, in violation of 18 U.S.C. § 1341, for conduct occurring on various dates between April 26, 2019 and August 15, 2019; and, 6 counts of money laundering, in violation of 18 U.S.C. § 1957(a), for conduct occurring on various dates between February 1, 2019 and April 22, 2019.  (Docket No. 3).

Presently before the Court is Defendant's Motion to Dismiss for Spoliation of Evidence, which is opposed by the Government.  (Docket Nos. 63; 67 at 25-27; 70 at 5-18; 74).  On May 2, 2025, the Court held an evidentiary hearing on Defendant's Motion, and the official transcript of that proceeding subsequently was filed of record.  (Docket Nos. 75, 77).  At the Court's direction, on July 23, 2025, the parties submitted post-hearing proposed findings of fact and conclusions of law ("FOF/COL") relative to Defendant's Motion.  (Docket Nos. 80, 81).  Defendant then filed a response to the Government's FOF/COL on August 6, 2025, and the Government filed a Reply thereto on August 13, 2025.  (Docket Nos. 83, 84).  After careful consideration of the parties' submissions, the transcript of the proceeding and the credible evidence of record, and for the following reasons, Defendant's Motion will be denied.

1

II.    **DEFENDANT'S MOTION TO DISMISS FOR SPOLIATION OF EVIDENCE**

Defendant alleges in his Motion that the Government executed a search warrant at his residence and premises and seized certain encrypted drives which contained his personal files, projects, client projects, attorney-client communications, and other personal and case-related data. (Docket No. 63, ¶ 3). According to Defendant, the drives contained exculpatory materials critical to his defense, but due to the Government's alleged "forensic failures" during the seizure process, the materials were not properly preserved, and they have been rendered permanently inaccessible. (*Id.*, ¶¶ 4, 6). Defendant contends that the loss of the supposedly exculpatory evidence raises spoliation concerns, as it implicates his right to due process and a fair trial. (*Id.*, ¶ 8). Therefore, he advocates that the Indictment should be dismissed. (*Id.*, ¶ 9).

The Government responds that the electronic storage devices seized from the search of Defendant's premises, which included laptop computers, cell phones, computer towers, and bulk sim or SD cards (collectively, the "ESD"), were properly seized, stored, and maintained in the possession of Homeland Security Investigations ("HSI") forensic examiners for later forensic review. (Docket No. 67 at 25-26). Forensic examiners imaged and copied certain of the ESD, installed it onto an external hard drive, and delivered it to Defendant. (*Id.* at 26). With respect to other seized ESD, forensic investigators encountered encrypted data that could not be unencrypted, despite HSI's sophisticated "cracking" tools. (*Id.*). The Government informed the defense that certain encrypted devices could not be examined by forensic investigators, but the devices could be examined by Defendant since he had the decryption key code. (*Id.*). If Defendant wished to examine any of the encrypted devices, he would have to do so in a controlled environment at the HSI offices so that investigators could properly image the devices and preserve the data. (*Id.*). In summary, the Government submits that it made the ESD available to Defendant and imaged as

much ESD as forensically available, but Defendant did not accept the invitation to examine the encrypted ESD. (*Id.* at 27). The Government attached to its response a letter from HSI Computer Forensics Special Agent David J. Coleman, refuting Defendant's contention that the encrypted data on the ESD has been destroyed or rendered permanently inaccessible as a result of the forensic examination. (*Id.*; *see also* Docket No. 67-8).

Defendant subsequently filed a Reply contesting the Government's position and claiming that the seized ESD "almost certainly" contained attorney-client privileged communications and "potentially exculpatory electronic communications." (Docket No. 70 at 11). According to Defendant, "critical electronic evidence continues to remain inaccessible to the defense," thus prejudicing him in preparing for trial. (*Id.*).

Finally, the Government filed a Sur-reply, with attached correspondence from Joseph Soeka, a senior digital investigative analyst with the Department of Justice's Cybercrime Laboratory. (Docket Nos. 74, 74-1). Mr. Soeka's correspondence identified "several technical misunderstandings, misstatements and inaccuracies regarding the nature of digital evidence and its handling procedures" as alleged by Defendant in his Reply, (Docket No. 74-1 at 1), and refuted Defendant's allegation that the forensic examination of the encrypted ESD rendered it permanently inaccessible. (*See id.* at 1-2).

### A.    <u>Background</u>

As discussed, at issue is whether the Government failed to properly preserve certain encrypted information contained on ESD seized from Defendant during a search of his residence and premises. At the evidentiary hearing, Defendant was the only witness who testified on behalf of the defense concerning the matter at issue, and he was subject to cross-examination concerning same. (See Docket Nos. 75, 77). He also entered three exhibits into evidence, which included

3

before and after photographs of a safe in his office and a search warrant return log. (Docket No. 75-1).

At an evidentiary hearing, it is well-settled that "the credibility of the witnesses and the weight to be given the evidence, together with the inferences, deductions and conclusions to be drawn from the evidence, are all matters to be determined by the trial judge." *United States v. Richardson*, 501 F. Supp. 2d 724, 734 (W.D. Pa. 2007) (citations omitted). To that end, as finder of fact, the Court "is free to accept or reject any or all of a witness's testimony." *United States v. Murphy*, 402 F. Supp. 2d 561, 569 (W.D. Pa. 2005) (citation omitted). "Credibility determinations are to be made in consideration of numerous factors, including the witness's demeanor and manner while on the stand, the witness's ability to accurately recollect the matters at hand, the manner in which the witness may be affected by the outcome, the extent to which the witness's testimony is either supported or contradicted by other evidence and testimony in the case, and, ultimately, the extent to which it withstands a common sense test of reason and logic." *Id.* When a defendant testifies, his credibility is to be judged in the same way as any other witness. *Id.* (citation omitted). In view of these principles, the Court finds that Defendant's testimony concerning the matter in question was not entirely credible as will be explained in more detail below.

Turning to the testimony adduced at the evidentiary hearing, Defendant conceded that he has never received any formal forensic training concerning digital devices and that he has no specific background in digital forensics. (Docket No. 77 at 13). Nonetheless, Defendant confirmed that he accuses the Government of destroying data during the attempted de-encryption of some ESD that was seized during the search. (*Id.* at 14-15). Defendant did not directly answer when asked on cross-examination what evidence he had in support of that accusation. (*Id.* at 15). In the Court's estimation, Defendant's non-responsiveness to this and other questions posed during

the hearing seriously undermines his credibility.

According to Defendant's testimony, passwords which could be used to de-encrypt the encrypted ESD were stored in a binder that was seized during the search of his premises. (Docket No. 77 at 10-11). On cross-examination, Defendant avoided directly answering whether he asked his attorney to advise the Government that the passwords were contained in the binder. (*Id.* at 15-16). In response to whether he ever informed his attorney that he wanted to review the contents of the ESD seized during the search, Defendant stated, "I just told him that it was impossible." (*Id.* at 19). When pressed how he knew that it was impossible, Defendant replied, "[b]ecause we don't have the papers listing the passwords." (*Id.*). Yet, Defendant eventually conceded that he could access the passwords from the binder that was seized during the search. (*Id.*). Nonetheless, when asked again at the conclusion of cross-examination whether he ever requested to review the contents of the encrypted ESD, Defendant avoided directly responding to that question. (*See id.* at 25). In the Court's estimation, Defendant's evasiveness in answering questions shows a lack of candor, which seriously undermines his credibility.

In the parties' post-hearing FOF/COL, they agree that Defendant and his counsel subsequently met with Government counsel and federal investigators at HSI offices on May 29, 2025, so that Defendant could examine discovery, including both the encrypted and unencrypted ESD. (Docket Nos. 80, ¶ 22; 81 at 2).[1] The Government represents in its FOF/COL that Defendant

---

[1] Defendant's counsel, Attorney Walker, states in the defense's FOF/COL, "[a]t the request of Mr. Aikens, undersigned counsel incorporates by reference Mr. Aikens' supplemental findings of fact and conclusions of law as though set forth at length herein." (Docket No. 81 at 10, n.2). With respect to Mr. Aikens' so-called supplemental findings of fact and conclusions of law, the Court repeats its previous observation stated in its Memorandum Opinion denying Defendant's Motion for a *Franks* Hearing, that is, it appears "Defendant is attempting an end-run around the prohibition against hybrid representation." (Docket No. 85 at 9, n.3). Once again, Defendant is reminded that he is represented by counsel, and he is cautioned that hybrid representation is not permitted. *See McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984) (no constitutional right to hybrid representation); *United States v. D'Amario*, 268 F. App'x 179, 180 (3d Cir. 2008) ("The Constitution does not confer a right to proceed simultaneously by counsel and *pro se*, and the District Court was not obligated to consider [the defendant's] *pro se* motions in light of his being represented by counsel on direct appeal.").

was provided approximately eight looseleaf papers, which contained handwritten notes that appeared to list passwords. (Docket No. 80, ¶ 22(a)). After reviewing the papers for less than a minute, Defendant commented that quite a bit of them were missing. (*Id.*). Defendant did not choose to examine any of the seized computer devices, nor did he attempt to use any of the passwords listed on the looseleaf papers to access the contents of any encrypted ESD. (*Id.*, ¶ 22(b)). Defendant was repeatedly asked whether he wanted to access any of the data on the encrypted ESD using the passwords on the looseleaf papers, but he declined and stated that he was not interested in trying to match the passwords to the seized electronic devices. (*Id.*, ¶ 22(e)).

Conversely, Defendant claims in his FOF/COL that the referenced passwords "were functional and led to real accounts and data being accessed, but nothing pertinent to the case." (Docket No. 81 at 2). According to Defendant, the Government had two silver binders, but both were missing most of their contents, and a third binder was completely missing. (*Id.*).

Defendant also responded to the Government's FOF/COL, broadly asserting for the first time that the Government agents acted with bad faith in supposedly destroying the encrypted ESD. (Docket No. 83 at 3). As support, the defense points to an attached letter written by Defendant,[2] along with 132 accompanying exhibits. (Docket Nos. 83-1, 83-2).

The Government subsequently filed a Reply addressing Defendant's letter to the Court, with an attached Report by Special Agent Scott Fell detailing what occurred at the parties' discovery meeting session at HSI offices on May 29, 2025. (Docket Nos. 84, 84-1).

---

2       To the extent Defendant would contend that the letter is somehow meant to be an affidavit (given the statement that he "declare[s] under penalty of perjury pursuant to 28 U.S.C. § 1746 that [the information contained in the letter is] true and correct," (Docket No. 83-1 at 1)), the Court does not construe the document as such because it includes argument and citation to legal authority, (*see id.* at 19-25), making it akin to some sort of legal brief. In the Court's estimation, Defendant's letter appears to be yet another attempt at hybrid representation, thus necessitating the Court to repeat the same admonition set forth above. *See supra*, n.1.

B.    **Legal Standard – Due Process Right of Access to Evidence**

For destruction of evidence to amount to a constitutional violation, the Supreme Court has held that the "evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *California v. Trombetta*, 467 U.S. 479, 489 (1984). The Court subsequently held that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988). Mere negligence by the Government or law enforcement, without any showing of bad faith, does not establish a due process violation. *See id*.

In summary, under *Youngblood* and *Trombetta*, to establish a due process violation for destruction of evidence, "a defendant must show that the government (1) acted in bad faith when it destroyed the evidence, which (2) possessed an apparent exculpatory value and, which (3) is to some extent irreplaceable." *United States v. Jackman*, 72 F. App'x 862, 866 (3d Cir. 2003) (internal quotation marks and citation omitted). Crucially, the "presence or absence of good or bad faith by the government will be dispositive." *Id.* (citation omitted). And, bad faith "turn[s] on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *Youngblood*, 488 U.S. at 56 n.1.

C.    **Defendant Has Not Established a Due Process Violation For Destruction of Evidence**

Defendant has not shown any of the necessary elements required to establish a due process violation for destruction of evidence. Defendant has not established that evidence on the encrypted ESD has actually been destroyed and/or is permanently inaccessible or that it was apparently exculpatory, let alone that the Government acted in bad faith. As illustrated by the summary of

7

Defendant's testimony at the evidentiary hearing, *see supra* at 4-5, other than his own conjecture and surmise, Defendant presented no evidence to establish that Government agents destroyed any evidence on the encrypted ESD which he claims is exculpatory.  In fact, the exculpatory value of any material on the encrypted ESD remains entirely unknown because Defendant "has done nothing more than speculate . . . that the [encrypted ESD] contained exculpatory evidence." *United States v. Robinson*, 855 F. Supp. 2d 419, 423 (E.D. Pa. 2012).  Despite the fact that the encrypted ESD belonged to Defendant, he has not coherently identified evidence contained on it which may be exculpatory.  *See United States v. Taylor*, 379 F. App'x 240, 244 (3d Cir. 2010) (rejecting destruction-of-evidence argument where the exculpatory nature of the evidence was "dubious at best"); *United States v. Lattanzio*, Crim. No. 15-446, 2017 WL 3297510, at *6 (D.N.J. Aug. 1, 2017) ("To establish a due process violation it is not sufficient to point to a trove of documents and merely speculate that it may have contained exculpatory information.") (citing *United States v. Ramos*, 27 F.3d 65, 71 (3d Cir. 1994)).

Even if Defendant is unable to access information on the encrypted ESD as he claims, there is no evidence in the record that the Government acted in bad faith relative to the encrypted ESD. To repeat, bad faith "turn[s] on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed."  *See Youngblood*, 488 U.S. at 56 n. 1.  Here, there has been no showing that Government agents found exculpatory material on the encrypted ESD which Defendant alleges is now inaccessible.  Additionally, Defendant has not shown that his claimed inability to access the encrypted ESD is attributable to any direction or action by the Government agents.  *See United States v. Burgess*, 2025 WL 957469, at *3 (3d Cir. Mar. 31, 2025) (affirming denial of motion to dismiss indictment for claimed spoliation of evidence where the defendant pointed to no specific evidence of bad faith).  To that end, there is no evidence suggesting any

official animus against Defendant, a Government plan to gain a tactical advantage, or knowledge that anything on the encrypted ESD was exculpatory. *See Trombetta*, 467 U.S. at 488 (holding that the Due Process Clause is only violated when there is "official animus . . . or . . . a conscious effort to suppress exculpatory evidence."); *Youngblood*, 488 U.S. at 58 ("[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law."); *United States v. Heiser*, 473 F. App'x 161, 166 (3d Cir. 2012) (holding that failure of seized computer drive and loss of back-up copy did not support finding of due process violation, absent showing of "an intentional act to gain a tactical advantage," any "official animus" toward the defendant, or "a conscious effort to suppress exculpatory evidence.").

Because Defendant has not shown that any evidence was destroyed in bad faith – which in and of itself is dispositive - and has only speculated that the encrypted ESD may contain exculpatory material, the Court need not reach the third factor, that is, whether the unspecified material was to some extent irreplaceable. *See, e.g., United States v. Thomas*, No. 2015-0039, 2019 WL 3229796, at *4 (D.V.I. July 16, 2019) (denying motion to dismiss without reaching third *Youngblood/Trombetta* factor because the defendant failed to satisfy the first two factors). Accordingly, Defendant's request to dismiss the Indictment based on the Government's alleged failure to preserve exculpatory evidence must be denied.

## III.    <u>CONCLUSION</u>

Because Defendant has not shown that any evidence was destroyed in bad faith and only has speculated that the encrypted ESD may contain exculpatory evidence, the Court concludes that Defendant's claimed inability to access the encrypted ESD does not constitute a due process

violation.  Accordingly, Defendant's Motion to Dismiss for Spoliation of Evidence, (Docket No.

63), is DENIED.

An appropriate Order follows.

<u>*s/ W. Scott Hardy*</u>
W. Scott Hardy
Date:  <u>September 11, 2025</u>                    United States District Judge

cc/ecf:  All counsel of record